768 So.2d 293 (2000)
Sheila A. HOWARD
v.
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER.
No. 99 CA 1826.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*294 Terry L. Bonnie, Baton Rouge, Counsel for Claimant/Appellee Sheila A. Howard.
Trenton J. Oubre, Baton Rouge, Counsel for Defendant/Appellant Our Lady of the Lake Regional Medical Center.
Before: LeBLANC and KUHN, JJ., and GRANT,[1] J. Pro Tem.
KUHN, Judge.
This appeal arises from an Office of Workers' Compensation ("OWC") ruling in favor of claimant, Sheila Howard, and against her employer, Our Lady of the Lake Regional Medical Center ("OLOL"). The ruling awards penalties and attorney fees for OLOL's failure to authorize Howard's evaluation by Dr. Louis Martin, a bariatric surgeon and weight loss specialist. We reverse.

I. FACTS AND PROCEDURAL BACKGROUND
Howard sustained an injury to her back during a work-related accident on the premises of OLOL in Baton Rouge, Louisiana, on November 28, 1997. After the accident, Howard received treatment for severe back pain from several different specialists, including Dr. Stephen J. Flood, an orthopedic surgeon. According to a March 23, 1998 evaluation letter, Dr. Flood determined Howard had a massive herniated disc at the L4-5 level that was attributable to her on-the-job injury. Dr. Flood advised that Howard, who was approximately five feet, six inches tall and weighed about 315 pounds, was not a candidate for back surgery due to her weight. He advised she would have to lose approximately one-third of her body weight before considering back surgery. Dr. Flood recommended that Howard be seen by Dr. *295 Martin at the Weight Loss Management Center in New Orleans, Louisiana "for consideration of surgery to help her with weight loss." Howard's counsel requested authorization for this evaluation from The Frank Gates Service Company, OLOL's workers' compensation insurer/administrator, and the request was denied.[2]
Subsequently, Howard filed a disputed claim for compensation asserting that OLOL had been arbitrary and capricious in not authorizing the requested medical treatment. On January 4, 1999, claimant also filed a rule requesting authorization to see Dr. Martin. Following a hearing on the rule, a February 10, 1999 OWC ruling was signed ordering OLOL to pay for Howard's evaluation by Dr. Martin.[3] The ruling further specified that "bariatric surgery and/or any weight loss surgical procedure is not approved at this time."[4]
In oral reasons, the OWC stated that OLOL had no medical evidence to contradict Dr. Flood's recommendation for the evaluation and found OLOL's failure to approve the evaluation was arbitrary. The OWC found that while the opinions of Dr. John E. Clark, a physical medicine and rehabilitation doctor, and Dr. Anthony S. Ioppolo, a neurosurgeon, supported the proposition that bariatric surgery was not an appropriate treatment of claimant's lumbar disc problems, they did not specifically contradict the need for the evaluation by Dr. Martin. The OWC reasoned that the evidence established Howard's medical need for weight loss and that Dr. Martin might have recommendations other than bariatric surgery to assist Howard in losing weight. The OWC found that Dr. Martin was the only weight loss specialist and bariatric surgeon treating Howard and that Howard had the right to select Dr. Martin as her physician in this specialty area.
During February of 1999, Howard filed a rule seeking to recover penalties and attorney fees based on the OWC's conclusion that OLOL had been arbitrary in its denial of the authorization to treat with Dr. Martin. Following another hearing, a May 10, 1999 OWC ruling was signed, which awarded Howard $2,000.00 in penalties and $1,500.00 in attorney fees. OLOL has appealed this ruling urging that the OWC committed legal error "by awarding penalties and attorney's fees on an initial choice of physician issue," citing La. R.S. 23:1121(C). Howard responds that she is entitled to recover statutory penalties and attorney fees under La. R.S. 23:1201(F).

II. STANDARD OF REVIEW
In a workers' compensation case, as in other cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p.4 (La.1/14/94), 630 So.2d 733, 737. On legal issues, the appellate court gives no special weight to the factfinder's conclusions, but exercises its constitutional duty to review questions of law and renders judgment on the record. Chaisson v. Oceanside Seafood, 97-2756, p.3 (La.App. 1st Cir.6/29/98), 713 So.2d 1286, 1288.

III. ANALYSIS

A. Attorney Fees under La. R.S. 23:1121
At both the time of the accident and the time of OLOL's denial of Howard's request for authorization to be evaluated *296 by Dr. Martin, La. R.S. 23:1121 provided, in pertinent part, as follows:[5]
B. The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
C. If the employer or insurer has not consented to the employee's request to change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney's fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such physician's services.
(Italics added.)[6]
In Washington v. Lyons Specialty Co., 96-0263 (La.App. 1st Cir.11/8/96), 683 So.2d 367, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408, the court addressed the propriety of an award of penalties and attorney fees for the employer's alleged failure to allow the claimant to exercise his choice of physician. The court concluded that the OWC had committed legal error in awarding penalties and attorney fees because the employer's consent was not required for the claimant to see his first choice of an orthopedist. The court stated, in pertinent part:
Louisiana Revised Statutes 23:1121(B) gives the employee the right to choose one treating physician in any field or specialty (italics in original). Thereafter, the employee must obtain the employer's or insurer's prior consent for a change of physician within the same field or specialty, although this consent is not required for a change to a treating physician in another field or specialty. La. R.S. 23:1121(B). Under La. R.S. 23:1121(C), if the employer or insurer has not consented to the employee's request to change physicians when such consent is required and a court determines that the withholding of such consent was arbitrary and capricious or without probable cause, an award of attorney's fees related to the dispute is proper. There is no provision in this statute for an award of penalties. Moreover, based on the clear language of the statute, the attorney's fee provision only applies to the situation where an employer refuses to allow an employee to change his initial choice of a physician in a field. Under Louisiana law, attorney's fees are not allowed except where authorized by statute or contract.
96 0263, pp. 7-8, 683 So.2d at 373. (citations omitted)
*297 As in the Washington case, Howard did not need OLOL's consent to see her first choice of a physician in the field of weight management or bariatric surgery because Howard has a statutory right to see a specialist of her choice in those fields. However, under the language of Paragraph (C) of Section 1121, OLOL's refusal to authorize the evaluation by Dr. Martin did not trigger the attorney fees provision, which is only triggered where an employer refuses to allow an employee to change his initial choice of a physician in a field. Thus, we agree with appellant's contention that the award of attorney fees and penalties is not proper based on the applicable language of La. R.S. 23:1121.[7] The language of this statute is penal in nature since its purpose is to punish arbitrary and capricious behavior on the part of the employer or insurer. Thus, it must be strictly construed. Smetak v. Louisiana Workers' Compensation Corp., 97-1497, p. 4 (La.App. 3d Cir. 4/15/98), 711 So.2d 417, 419; also see Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 16 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 24.

B. Attorney Fees and Penalties under La. R.S. 23:1201
Claimant asserts that the OWC's award of attorney fees and penalties is supported by La. R.S. 23:1201, which provides as follows, in pertinent part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim....
* * * * * *
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Additionally, La. R.S. 23:1203, which addresses the employer's duty to furnish medical expenses, provides, in pertinent part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal....
B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies ... is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
(Emphasis added.)
The language of La. R.S. 23:1201(F) must be read in conjunction with the language of La. R.S. 23:1203. In order to recover medical expenses under La. R.S. 23:1203, the claimant must prove that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Patterson v. Long, 96-0191, p. 11 (La.App. 1st Cir.11/8/96), 682 So.2d 1327, 1334, writ denied, *298 96-2958 (La.2/7/97), 688 So.2d 499. La. R.S. 23:1203 authorizes the recovery of reasonably necessary medical expenses that have been incurred by the claimant. Under the plain language of La. R.S. 23:1203, the obligation of the employer or insurer to furnish necessary medical treatment is limited to reimbursement. Kevett v. Exxon Company, USA, 99 CA 1567, p. 8 (La.App. 1st Cir.6/23/2000), ___ So.2d ___, ___, 2000 WL 1228849. La. R.S. 23:1201(F) states that it is the failure to provide payment which gives rise to the assessment of a penalty and attorney fees. The statute contains no language addressing the failure to authorize or approve medical treatment and contains no language regarding a prior guarantee of payment. See Hayes v. Louisiana Risk Management, 93-1144, p. 2 (La.App. 3 Cir. 4/6/94), 635 So.2d 591, 592, writ denied, 94-1020 (La.6/17/94), 638 So.2d 1097. Since La. R.S. 23:1201(F) is penal, it also must be strictly construed. Fusilier v. Liberty Rice Mill, Inc., 569 So.2d 1050, 1055 (La.App. 3d Cir.1990).
During the initial hearing addressing whether Howard was entitled to be evaluated by Dr. Martin, Howard testified that she had neither received treatment at Dr. Martin's clinic nor had she gone to Dr. Martin's office for the "free orientation" that was addressed in correspondence from the Weight Management Center. Since Howard has not incurred any medical expenses with respect to treatment by Dr. Martin, there is no amount due on which penalties and attorney fees can be imposed. Because Howard has not incurred any medical expenses that she can submit for reimbursement, we are precluded from finding that OLOL has failed to provide "payment" as required by La. R.S. 23:1201(F). Kevett v. Exxon Company, USA, 99 CA 1567, p. 8, ___ So.2d at ____. Accordingly, we find La. R.S. 23:1201 does not provide support for the OWC's award of penalties and attorney fees.[8]
We recognize that under our current workers' compensation statutory scheme, an employer who arbitrarily refuses to authorize medical treatment is not exposed to penalties and attorney fees where the claimant has not actually incurred the medical expenses. However, an employer who intentionally and arbitrarily denies medical treatment in certain situations may incur liability for damages beyond the remedies provided in the Workers' Compensation Act. See Weber v. State, 93-0062, pp. 9-10 (La.4/11/94), 635 So.2d 188, 193.

IV. CONCLUSION
For the above reasons, we reverse the May 10, 1999 OWC ruling, which awarded penalties and attorney fees. Costs of this appeal are to be paid by claimant, Sheila Howard.
REVERSED.
NOTES
[1] Judge Jo Ellen Grant of the 24th Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] According to claimant's allegations, OLOL declined authorization for treatment by Dr. Martin on April 8, 1998.
[3] During the hearing, counsel for OLOL stated that Howard had returned to work at OLOL on a part-time basis and was receiving supplemental earnings benefits.
[4] OLOL filed a suspensive appeal of the February 10, 1999 ruling. However, OLOL later voluntarily dismissed the appeal. This ruling also ordered that Howard "attend and comply with the weight loss management program provided to her by OLOL at the YMCA weight loss management program...."
[5] The law in effect at the time of the employee's injury generally applies to workers' compensation cases addressing the issue of an employee's entitlement to benefits or the amount of benefits an employee is entitled to receive. However, as an exception to the general rule, an employee's claim for penalties and attorney fees that results from a denial of medical treatment is governed by the law in effect at the time of the denial. Skipper v. Acadian Oaks Hosp., 00-67, pp. 2-3 (La.App. 3d Cir.5/3/00), 762 So.2d 122; McCoy v. KMB Transport, Inc., 98-1018, p. 5-10 (La.App. 1st Cir.5/14/99), 734 So.2d 886, 889-892, writ denied, 99-2295 (La.11/24/99), 750 So.2d 986.
[6] Acts 1999, No. 324, § 1, effective June 16, 1999, amended Paragraph C of Section 1121 to read:

If the employer or insurer has not consented to the employee's request to select a treating physician or change physicians when such consent is required by this Section...." (italics added.)
[7] We note that under the amended language of Paragraph C, which was effective on June 16, 1999, an award of "reasonable attorney fees" would be appropriate where an employer is arbitrary and capricious or without probable cause in withholding consent to the employee's request to select a treating physician.
[8] We also find La. R.S. 23:1201.2, addressing discontinuance of "payment of claims due and arising under this Chapter" does not support the OWC's award of attorney fees. Since claimant has not yet incurred any costs associated with treatment by Dr. Martin, there are no "claims due" under the language of this provision.