981 So.2d 257 (2008)
Haley MORRIS, Plaintiff-Appellant/Appellee
v.
RENT-A-CENTER, INC., Defendant-Appellant/Appellee.
No. 43,191-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*258 Law Offices of Street & Street by C. Daniel Street, Monroe, for Appellant/Appellee Haley Morris.
Bradley J. Gadel, Alexandria, for Appellant/Appellee Rent-a-Center, Inc.
Before PEATROSS, DREW and MOORE, JJ.
MOORE, J.
Haley Morris was awarded Temporary Total Disability benefits (TTDs) in a worker's compensation claim beginning August 3, 2005 until December 8, 2006, at a rate of $277.40 per week, together with interest thereon from the due date of each payment. The court also awarded Morris $4,000 in penalties and $4,000 in attorney fees. Morris appeals the termination of benefits on December 8, 2006, alleging she is still disabled. Her employer, Rent-a-Center, Inc., appeals the judgment awarding TTDs, penalties and attorney fees. For the reasons that follow, we find no merit in either appeal and affirm the judgment awarding TTDs from August 3, 2005 until December 8, 2006, and the award of penalties and attorney fees.

Facts
Haley Morris began working for Rent-a-Center, Inc. on June 30, 2005. She alleged in her disputed compensation claim form 1008, not filed until March 15, 2006, that she was injured on July 9, 2005, when she wrenched her back moving a king-sized bed mattress down an apartment stairwell with a co-worker Lee Green. She continued to work full-time for two more weeks and without incident until she failed to report to work on Saturday, July 30, 2005. On that day, she had her daughter call in sick for her with a complaint that her hip was hurting. Ms. Morris did not show up for work on Monday and Tuesday, August 1 and 2, 2005. Her mother called and reported that Haley's hip was still hurting. During each call, Mr. Walker testified that he requested that Haley call him. She did not call and Walker terminated her from her job with Rent-a-Center, Inc. for failing to report to work after July 29, 2005. Ms. Morris' daughter picked up her last paycheck.
Mr. Walker testified that, prior to filing the disputed compensation claim in March of the following year, Ms. Morris never requested that the company pay for any medical treatment, nor did he receive any report from her or her co-workers, Lee Green and Jake Boyette, that she suffered an injury on the job. Mr. Walker testified that he never received a fax from Dr. Green stating that Ms. Morris needed to see an orthopedic specialist.
Lee Green, who is now the store manager, testified that he did not recall the claimant having or reporting an injury on July 9, 2005, nor did he recall receiving an alleged FAX from Dr. Timothy Green, claimant's chiropractor. Green did not remember anything about July 9, 2005. However, Green did remember an incident in which he and Ms. Morris were delivering a bedroom suit to a man on Washington Street. He said that he had gone in the dwelling with a piece of merchandise. Ms. Morris was outside for a few minutes and when she came in, he asked her if anything was wrong. She told him that she had slipped on the steps. He asked her if she was okay, and she replied, "Yes, I'm fine." Because he was not there when the incident occurred, he did not know if she was carrying anything.[1]
*259 Jake Boyette, an assistant manager at the time of the alleged accident, testified that Ms. Morris never reported any back injury to him. On the other hand, he said that he knew she was having back problems. He recalled that she discussed changing her chiropractor. She never presented any medical bills to him, however, and he did not consider it unusual for Ms. Morris or anyone to be sore from time to time from moving furniture.
Importantly, Boyette recalled that Mr. Walker put Ms. Morris on light duty for three or four days after going to a chiropractor or other doctor. He did not actually see any medical excuse, and he assumed that Ms. Morris brought a medical excuse because Mr. Walker put her on light duty.
Ms. Morris testified that her daughter-in-law told her that she had been fired, but did not know with whom her daughter-in-law had spoken nor when. She remained unemployed from July 29, 2005 until January of 2006, when she went to work as a car salesperson at Performance Cars for approximately three weeks. She alleges she quit due to pain in her lower back and legs. She never asked Rent-a-Center to pay her medical bills incurred in August of 2005 and in December of 2006.
Two of claimant's relatives testified that Ms. Morris reported her injury to them.
The WCJ found that Lee Green's testimony confirmed the plaintiff's allegation of an accident arising out of and in the course of Morris' employment on July 9, 2005. Additionally, the court noted that Ms. Morris went to the Green Family Chiropractic clinic on July 20, 2005, complaining of an injury at work two weeks earlier. It awarded TTDs from August 3, 2005, when Dr. Timothy Green found that she was unable to work until released from an orthopedist, which occurred on December 8, 2006, when Dr. Liles examined her and determined she was not disabled to work. The WCJ also awarded penalties and attorney fees.
Ms. Morris appeals the judgment contending that she is still disabled and entitled to benefits. Rent-a-Center, Inc. appeals the award of TTDs, penalties and attorney fees.

Discussion
The standard of review of the workers' compensation court is the same as for the district court. Absent a finding of manifest error of fact or law, the judgment will be upheld. We review the WCJ's award of attorney fees and penalties under the manifest error standard. Sims v. Sun Chemical Corp., 34,947, 795 So.2d 439 (La.App. 2 Cir. 8/22/01); Kelley v. Jack Jackson Const. Co., 32,663 (La. App. 2 Cir. 12/30/99), 748 So.2d 1270, citing, Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Oliveaux v. Riverside Nursing Home, 29,419 (La.App. 2 Cir. 04/02/97), 691 So.2d 340.
To determine whether a workers' compensation claimant's right to benefits has been reasonably controverted, thereby precluding imposition of penalties and attorney fees, the court must ascertain whether the employer or its insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter factual and medical information presented by claimant throughout the time the employer refused *260 to pay all or part of benefits allegedly owed. LSA-R.S. 23:1201.
After review of the record in this case, we cannot say that the WCJ was clearly wrong in finding that a compensable accident occurred on July 9, 2005. Although Lee Green's memory of the incident is somewhat different from Ms. Morris' account of the accident, in that Green said he was not helping her move anything when she said she slipped, other evidence indicates that Ms. Morris was indeed injured during that time period. Importantly, Mr. Boyette recalled that Ms. Morris was obtaining chiropractic treatment for her back during this time; she was complaining of back pain and Mr. Walker put her on light duty.
We also find no error in the time period for which the WCJ awarded TTDs. The medical evidence shows that Ms. Morris visited the Green chiropractic clinic on July 20, 2005, reporting pain in her hip that first appeared two weeks earlier at work. On August 3, 2005, Dr. Green wrote her a medical excuse directing Ms. Morris to see an orthopedic specialist and excusing her from work until released from the orthopedist's care. This excuse was allegedly faxed to Dominic Walker on August 3, 2005. At this point, however, Mr. Walker had apparently already terminated her and made no effort to send her to an orthopedic specialist.
Ms. Morris did not see an orthopedic specialist until December 8, 2006, when she went to the North Louisiana Orthopaedic and Sports Medicine Clinic and was examined by Dr. Douglas N. Liles. Dr. Liles did not find any apparent physiological basis for her initial complaints and ordered a lumbar MRI. The MRI of her back was essentially normal for her age. Because Ms. Morris was complaining that the pain was in her hips, an MRI of her hip and pelvis was performed. The MRI of her hip and pelvis were normal; however, Ms. Morris complained that the pain was in her knee. Examination revealed no physical cause for the complaints.
For these reasons, we conclude that the trial court did not err in cutting off benefits after Dr. Liles could not find a cause for the complaints Ms. Morris says she suffers from.
We also affirm the WCJ's award of penalties and attorney fees. Once Rent-a-Center was on notice that Ms. Morris was having work-related back problems, and Dr. Green sent a fax to Dominic Walker indicating that Ms. Morris needed to see an orthopedic specialist, it had a duty to provide her with medical care within a reasonable time period. La. R.S. 23:1203(A); Ryan v. Blount Bros. Const., Inc., 40,845 (La.App. 2 Cir. 4/19/06), 927 So.2d 1242, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1272. Instead, it terminated her from her employment.

Conclusion
The judgment of the WCJ is affirmed. Both appeals are dismissed at the cost of each appellant.
AFFIRMED.
NOTES
[1] Ms. Morris alleged that she was injured while carrying one end of a King-sized mattress and Lee Green was on the other end.